This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-41238

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**ISAAC CARREON, JR.,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF LEA COUNTY**
**Mark Sanchez, District Court Judge**

Raúl Torres, Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Kathleen T. Baldridge, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**HENDERSON, Judge.**

**{1}** This matter was submitted to this Court on Defendant's brief in chief pursuant to the Administrative Order for Appeals in Criminal Cases from the Second, Eleventh, and Twelfth Judicial District Courts in *In re Pilot Project for Criminal Appeals*, No. 2022-002, effective November 1, 2022. Following consideration of the brief in chief, this Court assigned this matter to Track 2 for additional briefing. Now having considered the brief in chief, answer brief, and reply brief, we reverse for the following reasons.

**{2}**     Defendant contends that the evidence was insufficient to support his conviction for criminal damage to property in an amount exceeding $1,000. [BIC 1] Specifically, Defendant claims that the State failed to produce any evidence about the amount of damages, including that the damages exceeded $1,000. [BIC 1] Defendant also argues that it was fundamental error for the district court to omit the definitional instruction on "amount of damages" from the instructions provided to the jury. [BIC 14]

**{3}**     "[A]ppellate courts review sufficiency of the evidence from a highly deferential standpoint." *State v. Slade*, 2014-NMCA-088, ¶ 13, 331 P.3d 930 (omission, internal quotation marks, and citation omitted). "All evidence is viewed in the light most favorable to the state, and we resolve all conflicts and make all permissible inferences in favor of the jury's verdict." *Id.* (alterations, internal quotation marks, and citation omitted). "We examine each essential element of the crimes charged and the evidence at trial to ensure that a rational jury could have found the facts required for each element of the conviction beyond a reasonable doubt." *Id.* (internal quotation marks and citation omitted). "[A]ppellate courts do not search for inferences supporting a contrary verdict or re[]weigh the evidence because this type of analysis would substitute an appellate court's judgment for that of the jury." *Id.* (internal quotation marks and citation omitted).

**{4}**     The briefs indicate the following material evidence was presented at trial. On the relevant date, police were present at either a single-wide trailer or manufactured home (the home) owned by Daisha Pando for purposes of serving a warrant on Defendant. [BIC 1; AB 2] Defendant barricaded himself inside the home, and officers obtained a search warrant to enter the home and remove Defendant from it. [BIC 2] SWAT was called to serve the warrant and damaged the property in the process. [BIC 2] Photographs of the exterior and interior of the home were taken afterward, indicating SWAT BearCat damage to the fence and porch ramp and railing, broken windows from SWAT's deployment of gas canisters, and SWAT's removal of skirting from the bottom of the home. [BIC 3-4; AB 4-5]

**{5}**     Interior photographs of the home depicted it as old and messy. [BIC 3, 5] The photographs also showed a fresh hole in the floor of one of the bedrooms with a stick lying next to it and wood shavings around it. [BIC 3, 5] The hole was just large enough for a human to get through, and officers believed that Defendant dug the hole with the stick in order to hide under the trailer, where Defendant was eventually located and arrested. [BIC 3-4; AB 4] An investigating officer testified that wood shavings were also around the insulation and piping that was underneath the hole. [AB 4] An officer acknowledged that, other than the hole, the damage depicted in the photographs could all have been caused by SWAT. [BIC 5]

**{6}**     With regard to the amount of damage to the home's flooring, the jury was shown the photographs of the interior and exterior of the home, and saw a lapel video statement that Pando provided to police on the scene. [BIC 6; AB 1] In that statement, Pando stated that Defendant asked her if there was a way to get out of the trailer from the roof or beneath it, and that she told Defendant that the trailer did not have a crawl

space and, "you're not gonna fuck up my floor." [BIC 5] The State did not present any evidence of the amount or cost of the damage caused by the hole. [BIC 6]

**{7}** For purposes of a criminal damage to property charge, the amount of damage is calculated as either "the difference between the price at which the property could ordinarily be bought or sold prior to the damage and the price at which the property could be bought or sold after the damage," UJI 14-1510 NMRA, "or the cost of repair or replacement, whichever is less." *State v. Fierro*, 2024-NMCA-016, ¶ 8, 542 P.3d 802 (internal quotation marks and citation omitted); *see State v. Fernandez*, 2015-NMCA-091, ¶ 9, 355 P.3d 858 ("[T]he amount of damage is the cost of repair or replacement, *whichever is less*." (internal quotation marks and citation omitted)).

**{8}** In the present case, we disagree with the State's argument that it only needed to produce evidence regarding the cost of repair. [AB 7-10] In *State v. Barreras*, 2007-NMCA-067, ¶ 9, 141 N.M. 653, 159 P.3d 1138, this Court explained that when an average juror would know that the cost of replacing a damaged item—in that case, a high-end sport utility item—has a replacement cost well over the cost to repair the damage to the vehicle—in that case, $5,100—then evidence of replacement cost may not be necessary. However, we cautioned that when the replacement cost is not as easily ascertainable, such as when a vehicle is older or made by a lesser known manufacturer, then evidence of both the replacement cost and the repair cost may be necessary. *Id.*; *see also Fernandez*, 2015-NMCA-091, ¶ 10 (requiring the state to present evidence of both the replacement and repair cost of a damaged pickup truck because "the 'average juror' had no basis upon which to determine that the replacement cost of [the victim's] pickup truck, which was over a decade old and had noticeable preexisting damage, would be 'well over' the $1,500 cost of repair" (quoting *Barreras*, 2007-NMCA-067, ¶ 9)).

**{9}** In this case, the home was described only as old, and the charges indicate that it was in such a condition that Defendant was able to use a stick to bore a hole through its floor. Under those circumstances, we conclude that the average juror has no basis upon which to determine the repair and replacement cost values for the home and, therefore, that the State was required to produce evidence of both values, such that the jury was able to determine which was the lesser amount. *Id.*; *see also Fernandez*, 2015-NMCA-091, ¶ 10 (noting that the state offered photographs of the damaged truck and testimony regarding the cost of repair, but explaining that the photographs also "included evidence of unrelated cosmetic damage, dirt, and general wear," and holding, "[w]ithout further information regarding the pickup, such as its mileage, the photographs could not provide a sufficient basis for concluding that the replacement cost would be greater than the cost of repair"). As such, and because the State offered no evidence of the home's replacement value, the State failed to meet its burden of proof for the charge. *See Fernandez*, 2015-NMCA-091, ¶ 12 ("[B]y refusing to offer evidence regarding replacement cost, the [s]tate has failed to meet its burden for felony property damage beyond a reasonable doubt.").

**{10}** Moreover, our conclusion would not change if we were to accept the State's argument that because the damaged property is a residence, even if an older-model manufactured home, it is obvious that the cost of replacement far outweighs the cost of repairs. [AB 10] Here, there was no testimony indicating that the cost of repairing the damaged floor exceeded $1,000 and the only evidence presented from which the jury could reach such a conclusion were the photographs of the hole. Even viewing this evidence in the light most favorable to the State and resolving all conflicts and making all permissible inferences in favor of the jury's verdict, there was insufficient evidence to support the jury's verdict beyond a reasonable doubt that the amount of damage caused by Defendant exceeded $1,000. *See Slade*, 2014-NMCA-088, ¶ 13; *see also State v. Cobrera*, 2013-NMSC-012, ¶ 8, 300 P. 3d. 729 (noting that the types of evidence the state can introduce to establish the cost of repair includes receipts and price quotes for repair services); *cf. Fernandez*, 2015-NMCA-091, ¶¶ 6, 7 (reversing for lack of evidence as to a damaged vehicle's replacement cost, but noting that the repair cost was not in dispute and there was testimony from the vehicle owner regarding the amount it would cost to repair the damage).

**{11}** While we recognized in *Barreras* that "lay jurors are capable of assessing matters within their common knowledge and experience," 2007-NMCA-067, ¶ 9 (citation omitted), the requisite steps to repair a floor, as described in the State's answer brief [AB 11-12], were neither presented to the jury as evidence, nor are they, as the State seems to recognize [AB 16], the type of information that is within an average juror's common knowledge and experience. We therefore agree with Defendant that it required speculation for the jury to conclude, based solely on the photographs, that the amount of damage to the property exceeded $1,000. *See State v. Maes*, 2007-NMCA-089, ¶ 18, 142 N.M. 276, 164 P.3d 975 ("At some point, the link between the facts and the conclusion becomes so tenuous that we call it speculation." (internal quotation marks and citation omitted)); *Slade*, 2014-NMCA-088, ¶ 14 (providing that an inference is not reasonable where it must buttressed by speculation, guess, or conjecture rather than linked to a fact in evidence).

**{12}** Accordingly, we conclude that the evidence was insufficient to establish that the damage to the property exceeded $1,000. Because we reverse on this basis, we need not address Defendant's remaining claim.

**{13}** For the foregoing reasons, we reverse Defendant's conviction.

**{14} IT IS SO ORDERED.**

**SHAMMARA H. HENDERSON, Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Chief Judge**

**JACQUELINE R. MEDINA, Judge**